UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WILSHIRE INSURANCE COMPANY,

                    Plaintiff,

v.                                                                                     CASE NO.:

REGENCY INSURANCE BROKERAGE
SERVICES, INC.,

                    Defendant.

## COMPLAINT

Plaintiff, WILSHIRE INSURANCE COMPANY ("Wilshire") brings this Complaint against REGENCY INSURANCE BROKERAGE SERVICES, INC. ("Regency"), and alleges as follows:

## NATURE OF THIS ACTION

1.       This is an action for breach of contract and contractual indemnification arising out of Regency's failure to comply with Wilshire's guidelines in issuing a Commercial General Liability Policy on behalf of Wilshire. As a result of Regency's actions, Wilshire incurred monetary damages.

## THE PARTIES

2.       Wilshire is incorporated under the laws of the State of North Carolina and has its principal place of business in North Carolina. It is an insurance company authorized to do business in the State of Florida and elsewhere. At all times material hereto, Plaintiff Wilshire is and was a citizen of North Carolina.

3.       According to the State of Florida's Department of Corporations and upon information and belief, Regency is a Florida Corporation with its principal place of business in

Hallandale, Florida.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action as there is diversity jurisdiction.

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in Miami-Dade County, Florida, which is within this district. Also, the lawsuit with respect to the underlying claim was venued in Miami-Dade County, Florida, which is within this district.

## BACKGROUND

### The Agency Agreement

7.      Wilshire and Regency entered into General Agency Agreement No. 00290 (the "Agency Agreement") on October 20, 2009. In the Agency Agreement, Wilshire is referred to as "Company" and Regency is referred to as "Agent". A copy of the Agency Agreement is attached hereto as **Exhibit "A"**.

8.      Section I. Agent's Authority provides in relevant part:

> B. Agent is authorized to receive and accept proposals for insurance; to effect, issue, countersign and deliver such policies as may be authorized from time to time by the Company; to collect, receive and receipt for premiums thereon or therefore; to cancel or non-renew such policies in the discretion of the Agent where such cancellation is legally permissible, all in accordance with the attached Binding Authority Schedule, the Company's manuals, rate books, regulations and other specific instruction provided by the Company.

9.      The General Agency Agreement includes an indemnity provision at Section IV.

Indemnification, providing in relevant part:

> B. The Agent agrees to indemnify and hold the Company harmless for any damages resulting directly or indirectly from any violations of any insurance law or insurance department regulation, and/or breach of the Agent's obligations, acts or omissions under this Agreement, whether intentional or not.

> C. The Agent agrees to maintain the following kinds of insurance in at least the amount indicated and provide proof of such coverage upon request by the Company.

> Comprehensive General Liability     $1,000,000/each occurrence

> Professional Errors and Omissions     $1,000,000/each claim and in the aggregate

## The Victori Policy

10.     On behalf of Wilshire, Regency issued Commercial General Liability Policy No. CL00182938 to Victori, Inc. ("Victori") for the policy period of July 29, 2017 to July 29, 2018, which provides certain coverage up to the limits of liability of $1,000,000 for each occurrence (the "Policy").

11.     The Policy covers those sums the Insured becomes legally obligated to pay as damages because of property damage to which the insurance applies. "Property damage" is defined to include "[p]hysical injury to tangible property, including all resulting loss of use of that property."

12.     Pursuant to Wilshire's underwriting guidelines, which Regency was bound to follow pursuant to the Agency Agreement, form AL 16 55 09 16 "Work Height Exclusion" was required to be included on the Policy. A copy of required form AL 16 55 09 16 is attached hereto at **Exhibit "B"**. The Work Height Exclusion provides:

> This insurance does not apply to:

> **Work Height**

"Bodily injury" or "property damage":

(1) Resulting directly or indirectly out of operations performed, by you or on your behalf, on the exterior of any building or structure above a ground height of six stories or 72 feet, whichever is less; or

(2) Included in the "products-completed operations hazard" and arising directly or indirectly out of "your work" on the exterior of any building or structure above a ground height of six stories or 72 feet, whichever is less.

13.     The requisite Work Height Exclusion was not included on Policy No. CL00182938 issued to Victori, in breach of the Agency Agreement between Wilshire and Regency.

14.     Regency failed to include Form AL 16 55 09 16 "Work Height Exclusion" on Policy No. CL00182938, which would have excluded coverage for property damage resulting directly or indirectly out of operations performed by Victori, or on Victori's behalf, on the exterior of any building above a ground height of six stories or 72 feet, whichever is less.

15.     Further, the Special Class Section – Artisan/Service Contractors guidelines required that any risk with past construction defect claims or incidents be submitted directly to the Wilshire underwriters for consideration. A copy of the Special Class Section – Artisan/Service Contractors guidelines is attached at **Exhibit "C"**.

16.     Victori's July 26, 2017 application submitted to Regency indicated that a claim was made against Victori for water seepage through a window dated February 3, 2016.

17.     Notwithstanding that the application disclosed a prior construction defect claim, Regency failed to submit the application to Wilshire for consideration in violation of the applicable guidelines.

18.     On September 13, 2019, David Herschberger confirmed via email to Wilshire underwriter Ben McDonald that the prior claim was "just plain missed" by Regency. Mr. Herschberger acknowledged both that the risk should have been referred to Wilshire underwriting

based on the prior claim and the risk was not referred prior to binding.

### The Claim Against Victori

19.     After the Policy was issued, a claim was made against Victori for defective construction at the Miami Midtown 5 Project located at 3201 NE 1st Avenue, Miami, Florida which involved the construction of a 24-story building (the "Project").

20.     James McHugh Construction Company ("McHugh") was the general contractor on the Project. United Glass Systems Corp. ("United Glass") was the window and glass subcontractor. In January 2016, United Glass subcontracted with Victori to install the windows and glass. After Victori's work on the Project was completed in September 2017, it was alleged that leakage from the glass and glazing system manifested causing property damage, including to property above six stories or 72 feet.

21.     McHugh filed suit against United Glass and United Glass' surety seeking consequential and delay damages associated with the alleged deficiencies of the windows, the associated remedial work and damage to other property. United Glass agreed to perform remedial work and then filed suit against Victori, Wilshire, and others, seeking to recover the value of the remedial work. United Glass also filed a separate lawsuit against McHugh's surety.

22.     Victori provided notice of the claim to Wilshire, which Wilshire agreed to defend pursuant to the terms and conditions of the Policy.

23.     On behalf of Victori, Wilshire paid $400,000 to settle the claims made by United Glass against Victori with respect to the claims made by McHugh.

24.     On behalf of Victori, Wilshire paid $100,000 to settle the claims made by United Glass against Victori with respect to United Glass' own costs in remediating the alleged defective work.

25.     In addition to the foregoing settlement payments, Wilshire has incurred significant costs in defending Victori against the claims made by McHugh and United Glass for which it is entitled to indemnification from Regency.

26.     The underlying claim arose out of Victori's operations on a 24-story building.

27.     The failure to include the Work Height Exclusion in the Policy directly and proximately impacted Wilshire's coverage obligations under Policy No. CL00182938.

28.     Further, against Wilshire's guidelines, Regency issued Policy No. CL00182938 to Victori without submitting the account to a Wilshire underwriter, even though Victori had a prior loss for water damage.

**COUNT I**

**BREACH OF CONTRACT**

29.     In accordance with the General Agency Agreement, Regency was contractually required to include the Work Height Exclusion in the Policy issued to Victori.

30.     Regency breached its binding authority when it failed to include the Work Height Exclusion on the Policy issued to Victori.

31.     Regency further breached its binding authority when it failed to submit the account to underwriting as required due to Victori's prior loss in excess of $25,000.

32.     Had Regency followed the Company's guidelines and its obligations pursuant to the General Agency Agreement, the Policy would not have been issued to Victori and/or the Policy would have been issued with the requisite Work Height Exclusion and Wilshire would not have incurred damages in connection with the underlying claim.

33.     In accordance with the terms of the General Agency Agreement, and Regency's material breach of such terms, Regency is obligated to indemnify Wilshire for all damages resulting directly or indirectly from Regency's breach of its obligations, acts or omissions under

the General Agency Agreement.

34.     Despite Wilshire's repeated tender to Regency and demand for indemnification, Regency has thus far refused to indemnify Wilshire, in further breach of the General Agency Agreement.

WHEREFORE, Wilshire respectfully requests that this Court enter judgment in its favor as follows:

(a)     Declaring that Regency breached the General Agency Agreement;

(b)     Declaring that Regency shall indemnify Wilshire for all loss it incurred in connection with the underlying claim, including all defense expenses and indemnity payments;

(c)     Awarding Wilshire compensatory and other monetary damages; and

(d)     Awarding Wilshire such other and further relief that this Court deems just and proper.

## COUNT II

### CONTRACTUAL INDEMNIFICATION

35.     In accordance with the General Agency Agreement, Regency, as Agent, was contractually required to indemnify and hold Wilshire harmless for "any damages resulting directly or indirectly from any violations of any insurance law or insurance department regulation, and/or breach of the Agent's obligations, acts or omissions under this Agreement, whether intentional or not." *See* Exhibit A, Section IV.

36.     As set forth above, Regency breached its obligations under the Agreement by failing to include the Work Height Exclusion on the Policy issued to Victori and failing to submit the application to Wilshire's underwriters as required by the applicable guidelines, due to Victori's

prior construction defect claim.

37.     As a result of Regency's breaches of its obligations under the Agreement, Wilshire sustained significant damages in defending Victori against the claims made by McHugh and United Glass, including paying significant sums to defend and settle these claims.

38.     Pursuant to Section IV of the Agreement, Regency was contractually required to indemnify and hold Wilshire harmless for the loss incurred with respect to Wilshire's defense of Victori against the claims made by McHugh and United Glass. To date, Regency has failed to indemnify Wilshire for such loss.

WHEREFORE, Wilshire respectfully requests that this Court enter judgment in its favor as follows:

(a)     Declaring that Regency shall indemnify Wilshire for all loss it incurred in connection with the underlying claim pursuant to the Agreement, including all defense expenses and indemnity payments;

(b)     Awarding Wilshire compensatory and other monetary damages; and

(c)     Awarding Wilshire such other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Wilshire demands a trial by jury on all claims and defenses so triable.

DATED this 7th day of December, 2021.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
*Counsel for Wilshire Insurance Company*
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: 954.728.1280
Facsimile: 954.728.1282


By:   */s/ Kristen D. Perkins*
      **KRISTEN D. PERKINS, ESQ.**
      Florida Bar No. 611816
      **PAIGE S. NEWMAN, ESQ.**
      Florida Bar No. 1010358
      Kristen.Perkins@lewisbrisbois.com
      Paige.Newman@lewisbrisbois.com
      Secondary: Tracy.Gowen@lewisbrisbois.com